**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MELISSA H.,<br>Plaintiff,<br>v.<br>COMMISSIONER OF SOCIAL SECURITY,<br>Defendant. | Civil Action No. 25-16006 (MAS)<br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Plaintiff Melissa H.'s ("Plaintiff")[1] appeal of the Commissioner of the Social Security Administration's (the "Commissioner") final decision denying Plaintiff's request for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). (ECF No. 1.) The Court has jurisdiction to review this matter under 42 U.S.C. § 405(g) and reaches its decision without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons below, the Court affirms the Commissioner's decision.

## I. BACKGROUND

In this appeal, the Court must consider whether the Administrative Law Judge's (the "ALJ") finding that Plaintiff was not disabled is supported by substantial evidence. The Court begins with the procedural posture and decision by the ALJ.

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

### A. Procedural Background

Plaintiff initially filed an application for DIB in October 2021, alleging a disability beginning in October 2020. (AR 26, ECF No. 4.[2]) The Social Security Administration (the "Administration") denied the application both initially and upon reconsideration. (*Id.* at 103, 116.) Plaintiff thereafter requested a hearing (*id.* at 140-41), and the ALJ held hearings on September 17, 2024, and December 12, 2024 (*id.* at 26, 65-102). The ALJ denied Plaintiff's claim in a written decision dated February 28, 2025. (*Id.* at 26-54.) Plaintiff appealed to the Appeals Council, and the Appeals Council denied Plaintiff's request for review on July 30, 2025 (*id.* at 1-6), making the ALJ's February 28, 2025, decision the Commissioner's final decision.

This appeal followed. (*See generally* Compl., ECF No. 1.) On May 4, 2026, Plaintiff filed her moving brief in this action. (Pl.'s Moving Br., ECF No. 12.) The Commissioner opposed (Def.'s Opp'n Br., ECF No. 14), and Plaintiff replied (Pl.'s Reply Br., ECF No. 17).

### B. The ALJ's Decision

In his February 28, 2025, decision, the ALJ concluded that Plaintiff was not disabled. (AR 27.) The ALJ set forth the Administration's five-step sequential analysis for determining whether an individual is disabled. (*Id.* at 28-29 (citing 20 C.F.R. § 404.1520(a).) At step one, the ALJ found that Plaintiff "ha[d] not engaged in substantial gainful activity since October 19, 2020, the alleged onset date." (*Id.* at 29 (citation omitted).) At step two, the ALJ determined that Plaintiff had several severe impairments including: (1) migraine headaches; (2) cervical and lumbar degenerative disc disease; (3) Ehlers-Danlos Syndrome; (4) attention deficit disorder; (5) depression; and (6) anxiety. (*Id.* (citation omitted).) The ALJ also determined that Plaintiff had non-severe impairments

---

[2] The Administrative Record ("AR") is located at ECF Nos. 4 through 4-12, and 7. The Court will reference the relevant pages of the AR and will not reference the corresponding ECF page numbers within those files.

including "dry eye syndrome, bilateral myopia, recurrent follicular conjunctivitis, uterovaginal prolapse with incontinence, obstructive sleep apnea, and history of carpal tunnel syndrome and ulnar neuropathy." (*Id.* at 30-31.)

At step three, the ALJ determined that Plaintiff did not "have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526 during the relevant period. (AR 31.) With respect to Plaintiff's mental impairments, the ALJ stated that he specifically "considered whether the 'paragraph B' criteria [were] satisfied" and "whether the 'paragraph C' criteria were satisfied." (*Id.* at 32, 34.)

The ALJ determined that Plaintiff had the residual functional capacity ("RFC")[3] to perform "light work" as defined in 20 C.F.R. § 404.1567(b). (AR 35.) The ALJ found, however, that Plaintiff:

> can occasionally push and pull, occasionally stoop, climb ramps and stairs, kneel, crawl, and crouch, and can never climb ladders, ropes, and scaffolds. She can occasionally balance, as that term is used in the Department of Labor's Selected Characteristics of Occupations. She can frequently reach to the front and sides and occasionally reach overhead, can frequently handle and finger, and must never have concentrated exposure to extreme cold, extreme heat, humidity, and pulmonary irritants, and can never have concentrated exposure to loud noises and bright light (brighter than standard office lighting). She must never operate a motor vehicle or heavy machinery, or be exposed to unprotected heights or dangerous unprotected machinery. She can understand, remember, and carry out simple tasks; can make simple work-related decisions; can have

[3] RFC is defined as "the most [an individual] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1); *see Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by [her] impairment(s) . . . ." (citing *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999))). Determination of a claimant's RFC is the exclusive responsibility of the ALJ. 20 C.F.R. §§ 404.1520(c), 404.1546(c).

> frequent (but not constant) work-related interactions with co-workers, supervisors, and the general public.

(*Id.*)

At step four, the ALJ found that Plaintiff is "unable to perform any past relevant work" as an arts instructor because Plaintiff's past relevant work exceeds her RFC. (*Id.* at 52 (citation omitted).) The ALJ considered that Plaintiff was forty-five, which is defined as "a younger individual," and has at least a high school education. (*Id.* (citation omitted).) The ALJ determined that "[t]ransferability of job skills is not material . . . because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled,' whether or not [she] has transferable job skills." (*Id.* (citation omitted).) Based on the aforementioned factors and Plaintiff's RFC, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (*Id.* (citations omitted).) In doing so, the ALJ relied upon the testimony of the vocational expert, who testified that an individual of Plaintiff's age, education, work experience, and RFC "would be able to perform the requirements of representative occupations such as" storage rental clerk, routing clerk, furniture rental clerk, office helper, and cafeteria attendant. (*Id.* at 53.)

At step five, the ALJ determined that Plaintiff was not disabled, as defined in the Act, from October 19, 2020, the alleged onset date of Plaintiff's disability, through the date of the ALJ's decision, February 28, 2025, for the purposes of Plaintiff's DIB claim. (*Id.* at 54.)

## II. LEGAL STANDARD

### A. Standard of Review

On appeal from the final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the

cause for a rehearing." 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). To survive judicial review, the Commissioner's decision must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971) (quoting 42 U.S.C. § 405(g)); *see Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000) (explaining that the reviewing court is "bound to the Commissioner's findings of fact if they are supported by substantial evidence"). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "'may be somewhat less than a preponderance' of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

In reviewing the record for substantial evidence, the Court "may not weigh the evidence or substitute [its own] conclusions for those of the fact-finder." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (citation modified). Even if the Court would have decided differently, it is bound by the ALJ's decision if it is supported by substantial evidence. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)). The Court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) (citation omitted).

### B. Establishing Disability

To be eligible for DIB under the Act, a claimant must be unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. §§ 423(d)(1)(A). For purposes of the statute, a claimant is disabled only if her physical or mental impairments are "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Administrative regulations provide a five-step evaluation procedure to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(4). For the first step, the claimant must establish that she has not engaged in any substantial gainful activity since the onset of her alleged disabilities. *Id.* § 404.1520(a)(4)(i). For the second step, the claimant must establish that she suffers from a "severe . . . impairment" or "combination of impairments." *Id.* § 404.1520(a)(4)(ii). The third step requires that the claimant provide evidence that her impairments are equal to at least one of the impairments listed in Appendix 1 of the regulations. *Id.* § 404.1520(a)(4)(iii). If the claimant demonstrates that she suffers from a listed impairment or that her severe impairment is equal to a listed impairment, she is presumed to be disabled and entitled to DIB benefits. *Id.*; 20 C.F.R. § 404.1520(d). If she cannot so demonstrate, the eligibility analysis proceeds to step four. *See* 20 C.F.R. § 404.1520(e).

Before considering step four of the sequential evaluation process, the ALJ must first determine the claimant's RFC. 20 C.F.R. § 404.1520(a)(4)(iv). In doing so, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. *Id.* at § 404.1545(a)(2); SSR 96-8p, 61 Fed. Reg. 34474, 34477 (July 2, 1996). Then, at step four, the ALJ determines whether the claimant's RFC permits her to resume previous employment. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant's RFC permits her to resume previous employment, the claimant is not "disabled" and thus not entitled to DIB benefits. *Id.*; 20 C.F.R. § 404.1520(f). If the claimant cannot continue in this line of work, the analysis proceeds to step five. *See* 20 C.F.R. § 404.1520(a)(4)(v). Importantly, the burden of persuasion rests with the claimant in the first four steps. *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 763 (3d Cir. 2009).

At the fifth step, the burden shifts to the Commissioner to demonstrate that the claimant can perform other work consistent with her medical impairments, age, education, past work experience, and RFC. *Id.*; 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560. If the Commissioner cannot satisfy this burden, the claimant will receive DIB benefits. 20 C.F.R. § 404.1520(g).

## III. DISCUSSION

Plaintiff appeals the ALJ's decision and raises two main arguments in support of remand. (*See generally* Pl.'s Moving Br.) Specifically, Plaintiff contends that the ALJ failed to properly: (1) evaluate the severity of Plaintiff's migraine headaches in step three; and (2) assess Plaintiff's RFC based on the evidence. (*Id.* at 26, 43-45.) As explained below, the Court concludes that the ALJ's decision is supported by substantial evidence.

### A. The ALJ's Evaluation of Plaintiff's Migraine Headaches is Sufficient.

Plaintiff argues that the ALJ's evaluation of Plaintiff's migraine headaches at step three was insufficient because the ALJ failed to include "a sufficient evaluation pursuant to SSR 19-4p . . . to permit judicial review." (*Id.* at 29.) Specifically, Plaintiff argues that the ALJ was required

to evaluate whether Plaintiff's migraines were medically equivalent to Listing 11.02(B) and failed to do so by issuing a conclusory statement based on criteria not included in SSR 19-4p. (*Id.* at 29-33.) Plaintiff argues that the ALJ further erred in his step three analysis by: (1) "focusing on objective medical evidence when the lack of such evidence does not undermine a medical equivalency finding";[4] and (2) failing to explain why he declined to credit the testimony of Plaintiff's family concerning Plaintiff's migraine headaches.[5] (*Id.* at 26, 40-43.) The Commissioner argues that "[t]he ALJ's decision, as a whole, provided a sufficient rationale for a reviewing court to find a basis for the step three finding." (Def.'s Opp'n Br. 6-10.)

ALJs are generally required to meet a "reasonable articulation standard" in which their "decision[s] need only 'allow a subsequent reviewer . . . to trace the path of an adjudicator's reasoning.'" *Joseph P. v. Comm'r of Soc. Sec.*, No. 21-13524, 2023 WL 1929945, at *5 (D.N.J.

---

[4] Plaintiff argues that "[t]he ALJ erroneously relied, in part, on the lack of objective evidence" when the lack of such evidence could still be consistent with a disability claim based on migraine headaches. (Pl.'s Moving Br. 38.) Plaintiff, however, cites no Social Security rulings to support her assertions about the "objective" medical findings. She instead relies on *Gleb v. Berryhill* to support her point, but that case involved different circumstances. No. 13-1374, 2018 WL 1442895, at *6 (E. D. Pa. Jan. 31, 2018) (finding the ALJ erred by relying on physical examinations that pre-dated the plaintiff's craniotomy and ignoring four physical examinations reporting incidents of the plaintiff falling and experiencing severe head pain after the craniotomy), *report and recommendation adopted*, 2018 WL 1426703. Here, as discussed *infra*, and as acknowledged by Plaintiff in her brief, the lack of objective evidence was one *part* of the ALJ's reasoning—it was not his only rationale. *Cf. Jocelyne R. v. O'Malley*, No. 22-1523, 2024 WL 4751190, at *7 (D.N.J. Nov. 12, 2024) ("It is significant that [p]laintiff's unremarkable MRI [in a migraine case] was but a single piece of evidence that the ALJ considered . . . .").

[5] Plaintiff asserts that the ALJ did not credit the lay opinions of Plaintiff's spouse and children. (Pl.'s Moving Br. 40.) But the Court disagrees. The ALJ detailed the statements of Plaintiff's spouse and children in his decision and then stated that he had given this evidence "careful consideration." (AR 37; *accord id.* at 1752 (showing that the ALJ told Plaintiff during the December 12, 2024, hearing: "I intend to give very careful consideration to what . . . your husband[] told me in light of all the medical evidence . . . that's what I promise to do").) The ALJ then expressly credited Plaintiff's family's statements to the extent that he found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (*Id.* at 37.)

Feb. 10, 2023) (second alteration in original) (quoting 82 Fed. Reg. 5844-01 at 5858). They are not required to "use particular language or adhere to a particular format in conducting [their] analys[e]s." *Jones v. Barnhart*, 364 F.3d 501, 504-05 (3d Cir. 2004).

Turning to the step three analysis here, SSR 19-4p "provides guidance on how [the Administration] establish[es] that a person has a medically determinable impairment of a primary headache disorder and how [it] evaluate[s] primary headache disorders in disability claims under [T]itle[] II . . . of the . . . Act." SSR 19-4p, 2019 WL 4169635, at *1 (Aug. 26, 2019). A primary headache disorder is not a listed impairment, but in some "uncommon" situations, it may medically equal a listed impairment, namely "Epilepsy (listing 11.02)[, which] is the most closely analogous listed impairment."[6] *Id.* at *7.

Here, the ALJ referenced SSR 19-4p and then assessed whether Plaintiff's migraine headaches were medically equivalent to listing 11.02. He determined they were not. As the ALJ explained:

> Pursuant to Social Security Ruling 19-4p, headaches are not a listed impairment. Therefore, an individual with headaches alone cannot be found to have an impairment that meets the requirements of a listed impairment. However, after comparing the claimant's specific medical findings to all pertinent listings to determine whether medical equivalence exists, including listing 11.02 (epilepsy), it is determined that no medical equivalence exists with any listing in Appendix 1, subpart P of 20 CFR part 404. Specifically, none of the treatment evidence from the period at issue, as discussed in detail below, support[s] the claimant's reports regarding the frequency and intensity of these headaches, with only one emergency room visit for headache pain on October 7, 2020, just prior to her alleged onset date, and no other indication of the need for urgent treatment until July 2024 . . . .

(AR 32.)

---

[6] Plaintiff argues that her migraines are analogous to Paragraph B of listing 11.02. (Pl.'s Moving Br. 28-29.)

Plaintiff argues that this analysis was insufficient because SSR 19-4p requires ALJs to consider two criteria when comparing headache impairments to listing 11.02(B): (1) whether the headaches occur at least once a week for at least [three] consecutive months despite adherence to prescribed treatment; and (2) the presence of a 'detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena.'" (Pl.'s Moving Br. 30-31 (citation omitted) (second alteration in original); *see also* Pl.'s Reply Br. 12.). The issue for Plaintiff, however, is that the ALJ here did just that; he simply included much of his analysis in later portions of the decision.

Plaintiff relies on *Maria V. v. Bisignano*, which, on its face, is analogous to the present matter but, upon review, differs in crucial ways that reveal why Plaintiff's argument fails. No. 23-3447, 2025 WL 3017816 (D.N.J. Oct. 29, 2025); (*see* Pl.'s Moving Br. 37-38; Pl.'s Reply Br. 4-5.) In *Maria V.*, the ALJ's step three analysis included no discussion of the frequency or severity of the plaintiff's migraines, and the ALJ's step four analysis included just five paragraphs discussing the plaintiff's migraines. *Maria V.*, 2025 WL 3017816, at *7-8. Here, the ALJ's decision at step three discusses, albeit briefly, "the frequency and intensity of [Plaintiff's] headaches" and points to the step four analysis for further explanation of the ruling. (AR 32.) Whereas the ALJ in *Maria V.* glossed over the plaintiff's headaches in a few paragraphs, the ALJ here devoted several pages of his opinion to evidence of the frequency and severity of Plaintiff's migraines. (*See, e.g.*, *Id.* at 36-39, 43, 48.)

The ALJ here, moreover, expressly considered Dr. Brian Gerhardstein, M.D., Ph.D.'s ("Gerhardstein") descriptions of Plaintiff's headache events, and concluded that his statements were not persuasive because they were unsupported by underlying records and inconsistent with other evidence in the record. (*Id.* at 48-49.) The ALJ's analysis is consistent with the command of

20 C.F.R. § 404.1520c(b)(2), which requires an ALJ to "explain how [h]e considered the supportability and consistency factors for a medical source's medical opinions." The ALJ therefore "appropriately addressed the medical opinion evidence [of Gerhardstein] and gave h[is] reasons . . . for rejecting" it as unpersuasive based on the record, a determination that is supported by substantial evidence in the record. *Stephanie P. v. Comm'r of Soc. Sec.*, No. 21-12524, 2023 WL 2214179, at *4 (D.N.J. Feb. 24, 2023); *see also Tricia W. v. Comm'r of Soc. Sec.*, No. 24-11499, 2025 WL 3033994, at *6 (D.N.J. Oct. 30, 2025) (explaining that the ALJ does not have to "supply a comprehensive explanation" and that typically "a sentence or short paragraph would . . . suffice" (quoting *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981))). It is "not for this [C]ourt to reweigh the various medical opinions in the record[,]" but instead "to determin[e] if there is substantial evidence to support the ALJ's weighing of those opinions." *Kelly v. Colvin*, No. 09-759, 2013 WL 5273814, at *10 (D. Del. Sep. 18, 2013).

Ultimately, unlike in *Maria V.*, the ALJ's step three analysis here was premised on his findings (elaborated on in step four) that: (1) Plaintiff's migraines did not occur as frequently as she alleged; and (2) the detailed description of her headache events provided by Gerhardstein was not persuasive.[7]

Importantly, the ALJ here also concluded that, based on the record, "since the alleged onset date, [Plaintiff] has not taken her migraine preventative medications as prescribed, has generally

---

[7] Plaintiff cites numerous other decisions where courts have found that an ALJ failed to adequately assess whether a claimant's primary headache disorder was equivalent to a listed impairment. But in many of Plaintiff's cases, unlike here, the ALJ failed altogether to mention SSR 19-4p or to consider the two criteria Plaintiff identifies. *See, e.g.*, *Wright v. Comm'r of Soc. Sec.*, No. 24-11084, 2026 WL 1481204, at *2-4 (11th Cir. May 27, 2026) (explaining that the ALJ failed to mention SSR 19-4p and discussed neither listing 11.02(B) nor a medical source's description of the migraines); *Erica P. v. Comm'r of Soc. Sec.*, No. 24-10439, 2026 WL 891870, at *13 (D.N.J. Mar. 31, 2026) (finding the ALJ did not cite SSR 19-4p or listing 11.02 and "fail[ed] to analyze the [two] factors necessary").

declined changes to that medication, has not attempted injectable migraine prevention medications, has not explored options such as Botox therapy, and has not required frequent urgent visits for uncontrolled headache pain." (AR 44.) As the *Maria V.* court itself noted, "[e]vents that occur during a period when the claimant is 'not adhering to prescribed treatment without good reason' will not be counted" for purposes of step three. *Maria V.*, 2025 WL 3017816, at *7 (quoting 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 11.00(H)(4)(d)). While Plaintiff asserts that she had "difficulties using many typical migraine treatments" and that Quilipta (her daily medicine) caused some side effects, Plaintiff does not dispute that: (1) she was prescribed daily medication for migraines; (2) she reported "that . . . medication was controlling her symptoms"; and (3) she did not take it daily as her doctor directed. (*See* Pl.'s Moving Br. 32; *accord* AR 38-39 (citing an examination with Gerhardstein's clinic where Plaintiff reported that she did not want to stop taking Quilipta despite "some related side effects" because the medication reduced her symptoms); *id.* at 39, 1597 (same).)

The Court, therefore, finds that the ALJ's decision, "read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [Plaintiff] did not meet the requirements for [listing 11.02(B)]." *Jones*, 364 F.3d at 504-05; *see also Maria V.*, 2025 WL 3017816, at *5 (explaining that an ALJ's discussion of the appropriate factors, when present in the opinion as a whole, "satisfies [the] requirement [in the Third Circuit] that there be sufficient explanation to provide meaningful review of the step three determination'" (citation omitted)); *Shellenberger v. Comm'r of Soc. Sec.*, No. 25-1596, 2026 WL 2908742, at *8-9 (D.N.J. Sep. 28, 2026) (finding ALJ's cursory step three finding of no medical equivalency for the plaintiff's migraines was supported by substantial evidence discussed in step four analysis).

/

**B. The ALJ's RFC Determination is Supported by Substantial Evidence in the Record.**

Plaintiff also argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to properly account for: (1) "any breaks or days off in light of [Plaintiff's] severe migraine headaches"; and (2) "[Plaintiff's] use of a cane which, if adopted, would not permit her to stand and walk for the majority of the workday, as required to perform light work." (Pl.'s Moving Br 44.) The Commissioner argues that the ALJ "properly considered the entire record" in making his RFC determination. (Def.'s Opp'n Br. 11-12.) The Court agrees with the Commissioner.

In making his RFC determination, the ALJ weighed Plaintiff's statements about her migraines, her family's statements about her migraines, and the numerous medical and treatment records provided in the record. (AR 36-39.) The ALJ then summarized his analysis and concluded that the "intensity, persistence, and limiting effects of [Plaintiff's migraine] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 44.) The ALJ reasoned that Plaintiff: (1) did not take her migraine preventative medications as prescribed; (2) infrequently used her migraine rescue medication; (3) declined to try other suggested treatment options; (4) had only two urgent visits for headache pain over a more than four-year period; (5) did not report to her mental health provider that she has frequent debilitating headaches; and (6) presented to her headache clinic as "in no apparent distress and comfortable, with intact cranial nerve examination, bilaterally symmetrical and normal deep tendon reflexes, intact sensation, [a] normal Romberg exam, normal coordination testing including finger-to-nose and rapid alternating movement testing, normal gait, and with normal tandem gait throughout the period at issue." (*Id.*; *see also id.* at 38 (noting that Plaintiff's "migraine headaches . . . have typically been managed with relatively conservative treatment").

The ALJ then concluded:

> For these reasons, I have sufficiently accounted for the supported limitations stemming from the claimant's headache impairment in finding that she can perform work at the light (rather than medium) exertional level, with the reduced lifting and carrying requirements inherent in that exertional level; as well as in limiting her to never climbing ladders, ropes, and scaffolds and occasionally balancing, as that term is used in the Department of Labor's Selected Characteristics of Occupations. I have also accounted for the supported limitations from this condition in finding that the claimant can never have concentrated exposure to extreme cold, extreme heat, humidity, and pulmonary irritants, and can never have concentrated exposure to loud noises and bright light (brighter than standard office lighting); must never operate a motor vehicle or heavy machinery, or be exposed to unprotected heights or dangerous unprotected machinery; and can understand, remember, and carry out simple tasks and can make simple work-related decisions.

(*Id.* at 45.)

The ALJ's analysis and explanation of the limitations stemming from Plaintiff's headaches distinguish this matter from many of the (out-of-circuit) cases Plaintiff cites, in which the ALJs either failed to consider the severity, frequency, and duration of the plaintiff's migraines (*see, e.g.*, *Howard v. Kijakazi*, No. 21-2378, 2022 WL 3367750, at *5-7 (D.S.C. Aug. 16, 2022)), or failed to clarify whether they had accounted for the claimant's migraines at all in the RFC (*see, e.g.*, *Dial v. Comm'r of Soc. Sec.*, No. 19-1005, 2020 WL 5513338, at *4 (M.D. Fla. Sep. 14, 2020)).

Instead, the ALJ here adequately considered Plaintiff's migraines, and his RFC determination in light of those migraines is supported by substantial evidence in the record. *See Faith S. v. Bisignano*, No. 24-989, 2026 WL 821832, at *11 (M.D. Pa. Mar. 25, 2026) (affirming ALJ's RFC determination and finding that "the ALJ properly analyzed the record such that substantial evidence supports his conclusion that [plaintiff's] treatment was routine and conservative"); *Myers v. Comm'r of Soc. Sec.*, 684 F. App'x 186, 192 (3d Cir. 2017) (affirming the ALJ's finding that a physician's opinion that the claimant had a disability was unpersuasive given

that "the treatment itself was conservative, medication lessened symptoms, and treatment notes [did] not support the severity indicated in [that opinion]"); *see also Glass v. Comm'r of Soc. Sec.*, No. 18-15279, 2019 WL 5617508, at *8 (D.N.J. Oct. 31, 2019) (noting that an ALJ need not "perform a 'function-by-function' analysis . . . so long as the ALJ's RFC determination is supported by substantial evidence in the record").

Further, "[t]o the extent that Plaintiff . . . suggest[s] th[e] . . . evidence warrants time off-task or absences from work, her argument . . . boils down to simply a disagreement with the ALJ's decision, which the Court has . . . explained is supported by substantial evidence."[8] *See Jocelyne R. v. O'Malley*, No. 22-1523, 2024 WL 4751190, at *7 (D.N.J. Nov. 12, 2024) (citing *Perkins v. Barnhart*, 79 F. App'x 512, 514-15 (3d Cir. 2003)). "The Court therefore declines Plaintiff's invitation to re-weigh the evidence or to impose either Plaintiff's or this Court's own factual determination." *Id.* (citing *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011)).

Finally, the Court finds that Plaintiff's use of a cane does not undermine the ALJ's RFC determination. As Plaintiff correctly notes, she was required to make a "threshold showing" of medical necessity for her cane, but she incorrectly asserts that she met this burden by pointing to "the presence of a prescription in the record." (Pl.'s Moving Br. 51.) Contrary to Plaintiff's assertion, a "claimant's testimony that a cane has been prescribed is not enough to meet th[e] burden [of medical necessity]." *Mundo v. Kijakazi*, No. 21-517, 2023 WL 2632810, at *5 (M.D. Pa. Mar. 24, 2023). Indeed, the Third Circuit has explained that "a prescription for an assistive device with 'no discussion of its medical necessity' is 'insufficient to support a finding that [an assistive device] was medically necessary.'" *Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir.

---

[8] The ALJ also expressly analyzed the documents Plaintiff submitted to "corroborate her allegations of frequent absences of work prior to her alleged onset date due to her migraines" but found the documents did not specifically show absences due to migraines. (AR 47.)

2002). In *Howze*, the plaintiff presented evidence of a prescription for a cane and a report in which his doctor checked a box indicating that a hand-held assistive device was "medically required for ambulation[,]" but, without more, the court found this insufficient to prove medical necessity. 53 F. App'x at 222.

Similarly, here, Plaintiff points to an October 7, 2024, prescription that simply states "[c]ane for home daily use" and testimony concerning the cane, in which she stated that: "my doctor . . . suggested I get a cane because I – she wrote me a prescription for the disability placard which I have and she suggested I get a cane." (AR 82-83, 1592; *see also id.* at 1689 (mentioning that Plaintiff had obtained a cane, which she said "could help [her] when [she's] unstable"); *id.* at 1707.) This is not enough to prove medical necessity. And, to the contrary, the evidence shows that Plaintiff arrived at the same October 7, 2024, "well exam using [a] cane," "but was also documented in no acute distress, with overall normal musculoskeletal findings, and normal gait and stance." (AR 42, 1587.) A finding that Plaintiff walked with a normal gait undercuts her suggestion of medical necessity. *See Jocelyne R.*, 2024 WL 4751190, at *11. "The evidence presented by [plaintiff] was insufficient to support a finding that h[er] cane was medically necessary," and thus, the ALJ did not err. *Howze*, 53 F. App'x at 222.

The ALJ, moreover, explicitly stated that he made his RFC determination "[a]fter careful consideration of the entire record" (AR 35), a statement that this Court accepts as true. *See Ramirez v. Kijakazi*, No. 22-431, 2023 WL 5916906, at *5 (M.D. Pa. Sep. 11, 2023) (explaining that the ALJ "stated [that] he rendered his findings after consideration of the entire record[,]" and that the court "should take [the ALJ] at his word"); *Jones v. Comm'r of Soc. Sec.*, 297 F. App'x 117, 120 (3d Cir. 2008) ("[W]e take the ALJ at his word[.]").

The Court, accordingly, finds that the ALJ's RFC determination is supported by substantial evidence.

## IV. CONCLUSION

For the reasons outlined above, the Court affirms the Commissioner's decision. The Court will issue an Order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

DATED: November 4th, 2026